HEARD NOVEMBER TERM, 1872.

## KIRKPATRICK vs. ATKINSON.

A decree on appeal affirming the Circuit decree settles the law of the case to that time, and, as between the parties, is conclusive, in all subsequent proceedings in the same case, on all points adjudged by the Circuit decree.

Under a decree setting aside, for fraud, misrepresentation and undue influence, deeds of real estate and slaves in which the grantor reserved to himself the use for life, and ordering defendant, the grantee, to account to the plaintiff, as administrator of the grantor, for the rent of the lands and hire of the slaves from the date of the deeds : *Held,* That the account was properly taken by charging defendant with the value, as estimated, of the rent and hire.

BEFORE THOMAS, J., AT CHESTER, OCTOBER TERM, 1871.

The proceedings in this case were commenced by a bill in equity filed in 1857 by Isom Kirkpatrick, as administrator of John McKelvy, deceased, against Valentine Atkinson and Elizabeth his wife, and its object was to obtain a decree setting aside, on the

grounds of want of sufficient capacity, and of misrepresentation, fraud, and undue influence, two deeds made by the intestate and his wife, dated 23d June, 1847, whereby the intestate "in consideration of their services heretofore and which may hereafter be necessary, and moneys which may in future have to be paid," conveyed to defendants the tract of land on which he lived, and seven slaves and all his other personal estate, reserving to himself and his wife the use thereof during their lives.

The wife of the intestate died in September, 1848, and he died in July, 1852.

By an order of the Court made in July, 1857, issues were made up to try by a jury :

1. Whether the intestate was of sufficient capacity to execute the deeds ?

2. Whether said deeds were procured to be executed by misrepresentation, fraud and undue influence.

The issues were tried at March Term, 1858, and the jury found for the plaintiff on both issues.

Defendants moved for a new trial of the issues, and the motion was heard by Chancellor Dargan, in July, 1858, who made the following decree :

DARGAN, Ch.   This cause coming on to be heard on the bill, answer, and the verdict of the jury, on the issues heretofore ordered by this Court, and the grounds of appeal therefrom on the part of the defendants, on consideration of the same, it is ordered and decreed that said grounds of appeal be overruled—and the jury having found by their verdict that the three several deeds mentioned in the pleadings made by John McKelvy and wife to Valentine Atkinson and wife, to wit: The two deeds, dated 23d June, 1847, and also for negro Mat, of the 7th of August, 1847, were procured to be executed by misrepresentation and fraud, and at the time of the execution of said deed, the said John McKelvy was not of sufficient capacity to execute the said deeds—and this Court, being satisfied with said verdict, from the testimony, it is ordered and decreed that said deeds are fraudulent and void—that they be vacated and set aside—that the defendant, Valentine Atkinson, deliver them up to the Commissioner of this Court, and that the same be cancelled.   It is further ordered that said defendant, Valentine Atkinson, deliver to the complainant, administrator of John

McKelvy, the negroes and other personal property in his possession, embraced and mentioned in said deeds, together with the issue and increase of the female slaves since born, and also of the stock of horses, cattle, hogs and sheep. And it is ordered and decreed that said negroes and other personal property belonged to John McKelvy at the time of his death, and now constitute a part of his estate, and that the complainant, his administrator, proceed to administer the same according to law.

It is further ordered that the defendant account before the Commissioner of this Court for the hire of the negroes and the rents of the lands conveyed to him from the time of the execution of the deeds conveying the same; that he also account for all such slaves or other personal effects of the said John McKelvy, which have at any time come into his possession, and have been sold by him, or in any wise disposed of or lost by his default; also, for all moneys or personal effects of whatsoever kind or nature received by him for or on account of said John McKelvy. Also ordered that the Commissioner enquire and report to the next term of this Court upon the various matters of account herein directed to be taken. It is further ordered that defendant, Valentine Atkinson, pay the costs of these proceedings in this Court, and also of the issue in the Court of law. It is ordered that such payments of defendant, for John McKelvy, of any debts as may be established, be allowed as an offset *pro tanto* in the accounts directed to be taken.

The defendants appealed to the Court of Appeals in Equity, and that Court, at May Term, 1859, made a decree as follows:

"It is ordered and decreed that the Circuit Court be affirmed and the appeal dismissed."

The grounds of appeal and opinion of the Court of Appeals are reported in 11 Rich. Eq., 27.

On the reference before the Commissioner it appeared that McKelvy remained in possession of the property from the time of the execution of the deeds until his death, and there was no proof that defendants reserved the rents of the land and hire of the slaves. Testimony was heard as to what the land would have rented for and the slaves hired for, and on the 25th June, 1859, the Commissioner filed his report wherein he charged the defendants with the value of the rents and hire from the 23d June, 1847, to the 1st January, 1854.

The defendants excepted to the report on several grounds. The

first is recited *infra* in their second ground of appeal to this Court, and the second was to the effect that the Commissioner erred in charging defendant with the value of the rent after the death of McKelvy.

The case was heard on the report and exceptions by Chancellor Carroll, at July Term, 1859, who, on the 25th of March, 1862, filed his decree, whereby he sustained defendants' second exception, and so much of the first as related to the rents since the death of McKelvy—overruled the rest of the first and all other exceptions, and recommitted the report to be reformed in accordance with the decree.

Isom Kirkpatrick died in the year 1860, before the decree of Chancellor Carroll was filed. On the 2d October, 1870, a complaint, in the nature of a bill of revivor,.was filed by Elias M. Kirkpatrick, as administrator *de bonis non* of McKelvy. Defendants answered the complaint, and stated that the terms of the deeds gave them no right to the possession of the property during the life-time of McKelvy ; that they had never claimed such right, and had not, in fact, received the rents and hire, and the original bill did not call for an account of such rents and hire.

By an order made at April Term, 1871, the bill was revived and a Referee appointed with instructions to restate the account in accordance with the decree of Chancellor Carroll. Defendants moved at the same term for an order vacating, on the ground of mistake, so much of Chancellor Dargan's decree as required defendants to account for rent and hire anterior to the death of McKelvy, and to strike from the account all the charges during that period. The motion was refused, and defendants excepted.

On the 11th September, 1871, the Referee filed his report, whereby he charged defendants with the sum of $8,434.84, a greater part of which was rent and hire prior to McKelvy's death. Such part defendants moved, at October Term, 1871, to strike out of the account, but the motion was refused, and they again excepted. The report was then confirmed, and judgment having been entered for plaintiffs, defendants appealed on the grounds :

1. Because His Honor Chancellor Dargan, in his decretal order, bearing date July 9th, 1858, erred in directing that the defendants should account for the hire of negroes and the rent of lands of John McKelvy, from the date of the deeds conveying the same, it being apparent on the face of said deeds that they were not intended to

convey to the defendants any interest in said property until the death of McKelvy, which did not occur until several years subsequent to the date of said deeds; and the plaintiff's bill expressly stating that the said John McKelvy was in possession of said property at the time of his death, and not charging that the defendants had any use or enjoyment of said property during the life-time of said McKelvy.

2. Because His Honor Chancellor Carroll erred in not sustaining defendants' first exception to the report of the Commissioner, filed July 4th, 1859, which is in the following words: " Because the Commissioner erred in charging the defendants with rent of lands and hire of negroes from the 23d day of June, 1847, until the 1st of January, 1854, inasmuch as John McKelvy had in his possession dominion and control of said land and negroes, and exclusively enjoyed the emoluments thereof; and inasmuch as, by the express terms of the deeds made by McKelvy and wife to Atkinson and wife, the said McKelvy and wife were to have the benefit and use of said property conveyed, during their lives; and Atkinson and wife were not to have nor to enjoy the use or benefit of said lands and negroes until after their decease.

3. Because His Honor Judge Thomas erred in not granting defendants' motion to strike out of the report of the Referee all charges made for rent and hire during the life-time of John McKelvy, it being clear that defendants had no use or possession of the property during that time, and said charges being manifestly unjust and not warranted by law.

4. Because Giles J. Patterson, Esq., Commissioner in Equity, erred in holding that the decretal order of Chancellor Dargan required him to charge defendants with the hire of negroes and rent of lands from the date of the deeds in controversy, which were not in possession of defendants until the death of McKelvy, as it should not have been assumed that the said Chancellor intended by said order to charge the defendants for the use of property of which they had neither the possession nor the right to possession. And Chancellor Carroll and, after him, Judge Thomas, have erred in sustaining the error of such Commissioner, and in refusing to correct the same when brought to their attention.

5. Because the order of Chancellor Dargan, if intended to charge defendants with the rent of land and hire of negroes, during a period when it was not charged or proven that the same were in possession

of defendants, was an error patent on the face of the record ; and, being mere nullity, could confer no authority upon the succeeding Chancellor, Judge, Commissioner or Referee, for the successive rulings and orders whereby the defendants have been unjustly charged with the hire of negroes and the rent of lands during a period when said defendants had no possession of said negroes or enjoyment of said land.

6. Because of the amount composing the final judgment, the sum of $7,787.63 is on account of charges not claimed in the bill, and from which defendants have never received one particle of benefit, and it would be subversive of all law and justice for the plaintiff to receive more than he has demanded in his complaint, and more than he has proven to be due by reason of the mistakes or inattention of others—officers of this Court—for which the defendant is in no wise responsible.

*Brawley,* for appellants, contended :

1. That the decree of Chancellor Dargan, so far as it directed an account to be taken of the rents and hire prior to the death of McKelvy, related to a matter not in issue in the case, and established a liability different from and greater than that charged in the bill. The error, therefore, is apparent on the face of the record, and the decree should be reversed, or treated as void. He read from the bill to show that neither in the stating nor any other part was any claim made for an account of the rents and hire which had accrued before McKelvy's death, but, on the contrary, that such claim was inconsistent with the allegations and prayer of the bill. He cited 1 Dan. Ch. Pr., 359, 376, 412, 421, 435–8 ; Mitf. Pl., 39 ; Story Eq. Pl., §§ 263–4 ; *James* vs. *McKeoan,* 6 John., 569 ; *Lyon* vs. *Sallmage,* 16 John., 516 ; *Gonham* vs. *Child,* 1 Bro. C. C., 94 ; *Crocket* vs. *Lee,* 7 Wheat., 525 ; *Harrison* vs. *Nixon,* 2 Peters, 503 ; *Carneal* vs. *Banks,* 10 Wheat., 190 ; *McCaw* vs. *Blewit,* Bail. Eq., 98.

2. That defendants neither had the possession nor enjoyed the benefit of the property before McKelvy's death. The prayer of the bill is " that an account be taken of the hire of such slaves and the rents and profits of said tract of land, which have been received or enjoyed by the defendants." The decree should be construed with reference to the prayer. All plaintiffs asked was an account of the

rents and hire received, and the decree should not be construed as being intended to give more than was asked. So construing it, there is error in the account taken.

*Hemphill,* contra:

1. The defendants can have no standing in this Court as appellants.

(*a*) Because the objection, now taken as the ground of appeal, was, in effect, overruled in this case by the late Court of Appeals in Equity.—11 Rich. Eq., 27 to 32; 7 Stat., 304, § 3.

(*b*) Because the appeal now, from the decree of Chancellor Dargan, comes too late, for the Courts will not permit a matter once passed over in an appeal to be afterwards stirred up.—*Boyce vs. Boyce*, 6 Rich. Eq., 320; *Britton* vs. *Johnson*, Dud. Eq., 28; *Dupont* vs. *Johnson*, 1 Bail. Eq., 279; *Huson* vs. *Wallace*, 1 Rich. Eq., 24; *Austin* vs. *Kinsman*, 1 S. C., 101.

2. If there was a final decree as to the distinct branch of litigation now before the Court, the appeal should have been taken in the time and in the manner prescribed by the rules of Court, or the right of appeal is lost.—*Simpson* vs. *Downs*, 5 Rich. Eq., 424.

3. Chancellor Dargan's decree finally settled the point now under consideration, and this appeal is too late.—7 Stat., 305, § 5.

4. The appellants having acquiesced in the decree of Chancellor Dargan, and acted under it, their appeal should be dismissed, because taken too late.—*Rawls* vs. *Walls*, 5 Rich. Eq., 149, 150.

5. The bill is sufficient to cover the decree. By the special prayer of the bill no time is fixed from which the accounting is prayed.

6. If there is in the bill a prayer for specific relief and one for general relief, the Court will grant any relief the case requires not inconsistent with the specific relief prayed.—*Jeannerett* vs. *Radford*, Rich. Eq. Cases, 471, 474, 475; *Hatcher* vs. *Hatcher*, 1 McM., 317; Story's Eq. Pl., §§ 40, 41, and note 2; Mitf. Pl., 38, 39, and note 2; 2 Madd. Ch., 138, 139; *Beaumont* vs. *Boultree*, 5 Ves., 495.

7. If parties go to trial on general statements in the bill, the Court is bound to render a decree on the case thus made, if enough appears on the record to warrant the judgment which the facts proved authorize the Court to pronounce.—*Clark* vs. *Saxon*, 1 Hill Ch., 72.

8. By the decree of Chancellor Dargan it appears that he con-

sidered, as a question of fact, from the testimony before him, that Atkinson did have possession of the land and slaves during the life of McKelvy.

9. The judgment of the Chancellor on a question of fact, like the verdict of a jury, will not be disturbed unless the overbearing weight of the testimony leads to a different conclusion.— *Womack* vs. *Austin*, 1 S. C., 421 ; *Williams* vs. *Beard*, 1 S. C., 325 ; *Blackwell* vs. *Searles*, 1 S. C., 116 ; *Austin* vs. *Kinsman*, 1 S. C., 97, and the two cases there cited ; *Cabeen* vs. *Gordon*, 1 Hill Ch., 58 ; *Lord* vs. *Lowry*, Bail. Eq., 514.

10. There were sufficient facts in the testimony to warrant the conclusion that Atkinson had possession of the property during the life of McKelvy.

March 14, 1873.   The opinion of the Court was delivered by

WILLARD, A. J.   The decree of the Court of Appeals, on the appeal in this case, from the decree of Chancellor Dargan, is the law of the case and, as such, must be administered by us.

The Commissioner's report, on which the final decree now before us on appeal was based, proceeds on the ground that, under the accounting ordered by the decree of Chancellor Dargan, affirmed by the Court of Appeals, the defendant was to be charged with the reasonable hire of the slaves and rent of the land from the date of the execution of the deeds, subject to reduction by such discharges as should be established under the last clause of that decree.   As the case now stands before us, the question of charging the rents of the land only relates to rents accruing during the life-time of McKelvy.

The question is, whether this method of accounting is conformable to Chancellor Dargan's decree.   That decree contains the following language : " It is further ordered that the defendant account before the Commissioner of this Court for the hire of the negroes and the rent of the lands conveyed to him, from the time of the execution of the deeds conveying the same."   It concludes with the following language : " It is ordered that such payments of defendant for John McKelvy of all debts as may be established be allowed as an off-set, *pro tanto*, in the accounts directed to be taken."

This decree was based on the idea that the defendant had, by undue influence, obtained a certain control over the property of

McKelvy, and it is consistent with the idea that defendant had substantial control of that property from the execution of the deeds. The clauses directing the accounting are intelligible, as viewed from this standpoint. To direct an account of the profits of the employment of McKelvy's slaves and land, allowing to the defendant, out of such profits, whatever went to the support or advantage of McKelvy, would have led to no satisfactory result. Such an account, while difficult to take and unlikely to result in any satisfactory degree of certainty, would only be correct, in principle, if the relation between defendant and McKelvy had been legitimate. As it was, the exercise of control on the part of defendant over McKelvy's property must, under the decree, be referred to undue influence on the part of defendant over McKelvy. Such being the case, the risk and loss lies with defendant, if the profit of the employment of the land and slaves was less than, by prudent management, it might have been made. The proper course, therefore, was that directed, and which was adopted by the Commissioner, to charge defendant with the value of the use of the slaves and land, and leave to him to establish proper discharges under the last clause of the decree.

The proposition that has been advanced and discussed that the decree of Chancellor Dargan, as affirmed, must be regarded as having settled merely the question of fraud as affecting the deeds, leaving open all other questions in the case, has no foundation. It is the province of a decree to ascertain all the rights of the parties in contest and ripe for a decree, and not to select some one or more questions, and to dispose of them, leaving their bearing on the practical rights of the parties open for future discussion. The decree of Chancellor Dargan precludes, by its terms, the idea that any thing touched upon by that decree was left open and undisposed of. It not only determines the leading issue of the case, but gives specific directions as to the accounting, the effect of which was to settle the principles on which the accounting ought to be conducted.

The appeal must be dismissed.

*Moses*, C. J., and *Wright*, A. J., concurred.